UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| GREGORY S., | Case No. 3:21-cv-00432-AR |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| COMMISSIONER SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Gregory S. (his last name omitted for privacy) challenges the Administrative Law Judge's finding at step two of the sequential evaluation process, evaluation of the medical opinion of his treating physician, Dr. Moerkerke, and formulation of his residual functioning capacity. (Pl.'s Br. at 9-17, ECF No. 16.) As explained below, the court finds that the ALJ did

Page 1 – OPINION AND ORDER

not err at step two but did err in the other respects. The Commissioner's decision is REVERSED and REMANDED for further proceedings.[1]

## ALJ'S DECISION

In denying plaintiff's application for Title II Disability Insurance Benefits (DIB), the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff has not engaged in substantial gainful employment since June 1, 2015. (Tr. 17.) At step two, the ALJ determined that he had the following severe impairments: type II diabetes mellitus, degenerative disease of the lumbar spine, obesity, and chronic kidney disease. (Tr. 17.) At step three, the ALJ determined that his impairments singly or in combination did not meet or medically equal the severity of any listed impairment. (Tr. 20.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. §§ 404.1545, 416.945, the ALJ determined that plaintiff has the RFC to perform light work, except that he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; and can occasionally bend, stoop, kneel, crouch, and crawl. (Tr. 20.) He must avoid concentrated exposure to vibration, heights, hazards, and heavy equipment, as well as exposure to dust, odors, and other pulmonary irritants. (Tr. 20.) At step four, the ALJ determined that, considering his RFC, plaintiff could perform past relevant work as a bus driver and as a motor vehicle dispatcher. (Tr. 25.)

---

[1] This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2] To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

Page 2 – OPINION AND ORDER

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

**DISCUSSION**

Plaintiff argues that the ALJ erred by finding his asthma impairment not severe at step two; by finding unpersuasive the opinion of his treating physician, Dr. Moerkerke; and by formulating an RFC without a limitation concerning his need to continuously monitor his blood sugar throughout the day. (Pl.'s Br. at 9-17.) The Commissioner counters that the ALJ properly evaluated plaintiff's asthma impairment at step two; reasonably found Dr. Moerkerke's opinion not persuasive; and formed a complete RFC based on substantial evidence. (Def.'s Br. at 2-8, ECF No. 17.)

**A.**   *Step Two*

At step two, a claimant is not disabled if the claimant does not have any medically severe impairments. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). An impairment is not severe "when [the] medical evidence establishes only a slight abnormality or combination of

Page 3  – OPINION AND ORDER

slight abnormalities which would have no more than a minimal effect on an individual's ability to work." Social Security Ruling (SSR) 85-28, *available at* 1985 WL 56856, at *3. Even if an impairment is not severe, the ALJ must still consider its limiting effects when formulating the claimant's RFC. Ghanim v. Colvin, 763 F.3d 1154, 1166 (9th Cir. 2014).

The ALJ found that plaintiff had multiple severe impairments at step two but concluded that his asthma was "not severe." (Tr. 18.) As support for that conclusion, the ALJ referenced treatment characterizing plaintiff's condition as "mild persistent asthma without complication." (Tr. 546, 715.) Although plaintiff's asthma condition can be exacerbated by external factors—such as smoke, poor air quality, and viral infection—for which he sought emergency care in 2016 and 2017, the ALJ noted that plaintiff was generally able to control his condition using a nebulizer and inhaler. (Tr. 368, 396, 400, 694-96, 699, 721.) The ALJ's findings are supported by substantial evidence. Thus, the ALJ could ably conclude that plaintiff's asthma did not result in significant limitations and was not a severe impairment and did not err a step two.[3]

**B.    *Medical Opinion Evidence***

For disability claims filed on or after March 27, 2017, new regulations for evaluation medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

---

[3]    The court notes that, even if the ALJ had erred at step two, plaintiff offers no argument suggesting that such error would have been harmful at later steps in the sequential process.

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinions. *Id.* §§ 404.1520c(c)(1), 416c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* §§ 404.1520c(c)(3), 416c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* §§ 404.1520c(b)(2)-(3), 416c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(c)(b), 416c(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

Page 5 – OPINION AND ORDER

Plaintiff argues that the ALJ improperly found the opinion of his primary care physician, Dr. Moerkerke, unpersuasive. (Pl.'s Br. at 10.) Dr. Moerkerke submitted a medical source statement, in which he opined that plaintiff would likely miss at least 16 hours a month and have impaired concentration approximately 10 percent of the standard workweek. (Tr. 644.) Dr. Moerkerke also opined that plaintiff had physical limitations, such that he could lift or carry 10 pounds occasionally and 5 pounds frequently; stand or walk 2-3 hours a day, for 20 minutes at a time; never climb, stoop, bend, kneel, or crawl; occasionally balance; and frequently reach, handle and finger. (Tr. 645-46.) Given those limitations, Dr. Moerkerke concluded that plaintiff would not be able to perform his prior work as a dispatch manager. (Tr. 646.)

As an initial matter, the ALJ properly rejected Dr. Moerkerke's conclusion that plaintiff is unable to perform his prior work as a dispatch manager. (Tr. 24.) Under the revised regulations, statements about whether a claimant is capable of performing past relevant work are "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(3)(vi). Plaintiff contends, however, that the ALJ's evaluation of the supportability and consistency of Dr. Moerkerke's opinion is not supported by substantial evidence. (Pl.'s Reply Br. at 2, ECF No. 18.) The court agrees.

First, with respect to supportability, the ALJ found that Dr. Moerkerke's assessed limitations were neither explained well nor supported by objective medical evidence. (Tr. 24.) The ALJ noted that Dr. Moerkerke opined that plaintiff's limitations were "[p]rimarily due to his symptoms rather than his medications," but found that explanation insufficient. (Tr. 24, 644.) Read in isolation, such an explanation is insufficient. However, when considered in the context of Dr. Moerkerke's overall opinion—which notes that plaintiff's symptoms include "[c]hronic back pain with intermittent lower extremity pain/weakness, intermittent shortness of

breath/wheezing, [and] exercise intolerance"—Dr. Moerkerke's assessment that plaintiff would likely miss up to 16 hours a week and had physical and postural limitations due to fluctuating and intermittent pain is reasonably explained. (Tr. 644.) Similarly, although the ALJ concluded that Dr. Moerkerke's assessed limitations were not supported by objective evidence, plaintiff points to objective findings corroborating those limitations, including treatment records reflecting pain and weakness in his back, legs, and chest and imaging showing moderate to severe lower lumbar impairments. (Tr. 651, 673, 684, 691, 708, 742, 932.) Given that evidence, the ALJ's conclusion that Dr. Moerkerke's opinion is unsupported by the record is not backed by substantial evidence.

Next, the ALJ found Dr. Moerkerke's opinion inconsistent with the record. For example, although Dr. Moerkerke assessed that plaintiff's hand function and ability to lift and carry were limited by his symptoms, the ALJ found the extent of those proposed limitations inconsistent with an examination reflecting no nerve impingement and only mildly limited range of motion. (Tr. 24 (citing 673, 956).) Likewise, the ALJ found the postural limitations assessed by Dr. Moerkerke inconsistent with an examination showing plaintiff had normal gait and full lower extremity strength. (Tr. 25 (citing Tr. 956).)

Plaintiff argues that those findings are not based on substantial evidence because the ALJ selectively relied on two pages of his 700-page record. (Pl.'s Reply at 2.) The court agrees. It is well-settled that "an ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant." *Ghanim*, 763 F.3d at 1164. Here, although the examination cited by the ALJ reflects no nerve impingement and mildly limited range of motion, other examinations, diagnostic imaging, and treatment records reflect a history of degenerative disc disease, accompanied by chronic pain and limited range of motion. (Tr. 651, 673, 684, 691-

Page 7 – OPINION AND ORDER

92, 742, 758, 932.) Likewise, although the ALJ based his finding of inconsistency on a 2018 examination showing that plaintiff had a "normal gait," elsewhere the record generally reflects that plaintiff had an antalgic gait, walked with a cain, and experienced weakness in his lower extremities. (Tr. 681-82, 690, 708, 755.) By selectively relying on evidence unfavorable to plaintiff, and by failing to reconcile that evidence with examinations more favorable to plaintiff's position, the ALJ unreasonably concluded that Dr. Moerkerke's opinion was inconsistent with the record. Therefore, substantial evidence does not support the ALJ's finding that Dr. Moerkerke's opinion was not persuasive, and the ALJ erred.

C.  **RFC Formulation and Duty to Develop Record**

The RFC is the maximum a claimant can do despite his limitations. 20 C.F.R. § 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's subjective symptom testimony. SSR 96–8p, *available at* 1996 WL 374184. The ALJ is also responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008) (affirming the ALJ's translation of moderate functional limitations into the claimant's RFC).

Plaintiff contends that the ALJ failed to formulate an RFC that encompassed all of his functional limitations. Specifically, plaintiff points to a letter from his pharmacist, Edward Saito, PharmD, who opined that "it is very important that [plaintiff] continues to self-monitor his blood sugar readings throughout the day." (Tr. 975.) The ALJ found Mr. Saito's opinion persuasive but did not acknowledge that medical need or include possible corresponding limitations in plaintiff's RFC. (Tr. 20, 24.) Plaintiff contends that omission was error.

Page 8  – OPINION AND ORDER

The Commissioner acknowledges the omission but argues that it was not error because Mr. Saito did not specify what restrictions or limitations should be accounted for in plaintiff's RFC. (Def.'s Br. at 7-8.) That argument is unpersuasive. Although Mr. Saito did not explicitly state that plaintiff's need to continuously monitor his blood sugar required corresponding restrictions or limitations—such as a need for unscheduled breaks—the ALJ had an independent duty to develop the record and ascertain whether such limitations were necessary. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interest are considered."); *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (noting that, while burden of demonstrating disability ultimately lies with claimant, the ALJ's duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow form proper evaluation of the evidence"). Here, although the ALJ found persuasive Mr. Saito's opinion that plaintiff needs to self-monitor his blood sugar ratings throughout the day, it did not consider what restrictions, if any, stem from that condition. The ALJ's failure to develop the record on that issue was error.

Moreover, plaintiff has shown that that failure to develop the record resulted in possible prejudice. For instance, plaintiff contends that the need to test his blood sugar multiple times throughout the day affects his ability to maintain the persistence and pace necessary to work as a bus driver. (Pl.'s Reply Br. at 6.) Because the ALJ omitted that medical need and possible related limitations from Plaintiff's RFC, the vocational expert's testimony that plaintiff could work as a bus driver is not supported by substantial evidence. At the hearing, plaintiff also testified that he had lost his past positions as a bus driver and a motor vehicle dispatcher because federal regulations did not allow him to drive while he was on insulin. (Tr. 41-42.) The ALJ's failure to

Page 9  – OPINION AND ORDER

reconcile plaintiff's testimony with his finding that plaintiff could perform those positions leaves an ambiguity in the record that must be explored on remand. Accordingly, the court finds that the ALJ erred.

D.     *Remedy*

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefit or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

As discussed above, the ALJ's reasons for discrediting Dr. Moerkerke's medical opinion were not supported by substantial evidence and the ALJ did not develop the record with respect to Dr. Saito's opinion that plaintiff would need to be able to continuously monitor his blood sugar throughout the workday. Thus, the first requisite of the credit-as-true analysis is met. As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been

fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citation omitted). Here, the record would benefit from further development. Specifically, the court finds that the record would benefit from additional vocational testimony based on a reformulated RFC. Accordingly, this case is remanded for further administrative proceedings to: (1) conduct a *de novo* review of the medical opinion evidence; (2) obtain additional vocational expert testimony based on a reformulated RFC; and (3) conduct any further necessary proceedings.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's final decision and REMANDS this case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED December 20, 2022.

_____/s/ Jeffrey Armistead_____  
JEFFREY ARMISTEAD  
United States Magistrate Judge